**User Name:** Paula Greisen

**Date and Time:** Tuesday, March 17, 2026 11:45 AM MDT

**Job Number:** 278759723

## Document (1)

1. *Grillot v. Okla. ex rel. Univ. of Okla. Bd. of Regents, 2021 U.S. Dist. LEXIS 246195*

   **Client/Matter:** Van Wilson



Response to MSJ Ex.1

Neutral
As of: March 17, 2026 5:45 PM Z

# Grillot v. Okla. ex rel. Univ. of Okla. Bd. of Regents

United States District Court for the Western District of Oklahoma

July 29, 2021, Decided; July 29, 2021, Filed

Case No. CIV-19-241-J

**Reporter**
2021 U.S. Dist. LEXIS 246195 *; 2021 WL 6101667

SUZETTE GRILLOT, Plaintiff, v. STATE OF OKLAHOMA ex rel., UNIVERSITY OF OKLAHOMA BOARD OF REGENTS, et al., Defendants.

**Prior History:** *Grillot v. Okla. ex rel. Univ. of Okla. Bd. of Regents, 2019 U.S. Dist. LEXIS 130762, 2019 WL 3558183 (W.D. Okla., Aug. 5, 2019)*

## Core Terms

termination, salary, retaliation, cuts, pretext, non discriminatory reason, summary judgment, employees, budget, protected class, prima facie, undisputed, gender discrimination, prima facie case, budget cuts, disparity, faculty, gender, reporting, reasons, instructions, articulate, positions, adverse employment action, publicly, email, staff, male, burden of proof, dissemination

**Counsel:** **[*1]** For James L Gallogly, individual capacity, James L Gallogly, President University of Oklahoma in his official capacity, Defendant: Anton J Rupert, Geren T Steiner, Rupert & Steiner PLLC, Oklahoma City, OK.

For Jon Kyle Harper, individual capacity, Defendant: Amy J Pierce, Hampton Barghols Pierce PLLC, Oklahoma City, OK.

For Suzette Grillot, Plaintiff: Rand C Eddy, LEAD ATTORNEY, Mulinix Goerke & Meyer PLLC, Oklahoma City, OK.

For State of Oklahoma, ex rel University Of Oklahoma Board of Regents, Defendant: Heidi J Long, University of Oklahoma Office of Legal Counsel, Norman, OK.

For Jon Kyle Harper, Senior Vice President and Provost University of Oklahoma in his official capacity, Defendant: Rachel M Rogers, Heidi J Long, University of Oklahoma Office of Legal Counsel, Norman, OK; Amy J Pierce, Hampton Barghols Pierce PLLC, Oklahoma City, OK; Anton J Rupert, Rupert & Steiner PLLC, Oklahoma City, OK.

**Judges:** BERNARD M. JONES, UNITED STATES DISTRICT JUDGE.

**Opinion by:** BERNARD M. JONES

## Opinion

**ORDER**

Plaintiff Suzette Grillot sued (1) the State of Oklahoma ex rel., Board of Regents of the University of Oklahoma (OU Board of Regents), (2) former University of Oklahoma (OU) President James L. Gallogly, and (3) OU Provost Jon **[*2]** Kyle Harper. *See* Sec. Amend. Compl. [Doc. No. 28].[1] Defendant OU Board of Regents has filed a motion for summary judgment (OU Board of Regents' Mot.) [Doc. No. 92] and Plaintiff has responded (Pl.'s Resp.) [Doc. No. 103]. For the reasons discussed below, Defendant OU Board of Regents' motion is GRANTED.

### I. Relevant Background

Plaintiff has been employed at OU since January 1999, and from December 2012 until January 18, 2019, was the Dean of the David L. Boren College of International Studies (CIS). She has been an advocate for CIS and minority students at OU and an outspoken critic of many OU policies and practices. On January 18, 2019,

[1] The Court has already granted summary judgment to Defendants Gallogly and Harper, disposing of all claims against them. [Doc. No. 116]. However, as these individuals played a role in the events on which Plaintiff bases her claims against Defendant OU Board of Regents, the Court will continue to refer to them as "Defendant Gallogly" and "Defendant Harper."

Defendant Harper terminated Plaintiff from her position as CIS Dean though she remains a tenured professor within the college. Plaintiff was also removed from various other positions at OU following her termination as dean. For continuity, the Court refers to both her dean termination and removal from other positions, collectively, as the "January 2019 termination."

As related to Defendant OU Board of Regents, Plaintiff alleges (1) gender discrimination under Title VII; (2) retaliation for reporting gender discrimination under Title VII; (3) discrimination **[*3]** for association with a protected class under Title VII; (4) retaliation for reporting discrimination against members of a protected class under Title VII; and (5) gender wage discrimination under the Equal Pay Act (EPA) and Title VII. *See* Sec. Amend. Compl. at 21-23.[2]

## II. Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*; *see also Hooks v. Atoki, 983 F.3d 1193, 1205 (10th Cir. 2020)*. Under such a review, the Court "'construe[s] the factual record and the reasonable inferences therefrom in the light most favorable to the nonmoving party.'" *Alfaro-Huitron v. Cervantes Agribusiness, 982 F.3d 1242, 1249 (10th Cir. 2020)*.

## III. Findings of Fact

The Court adopts the undisputed facts set forth in its prior Order [Doc. No. 116] and further finds the following material facts undisputed:

- Plaintiff was appointed as CIS Dean in 2012 and reported directly to Defendant Harper. *See* OU Board of Regents' Mot. at 11; Pl.'s Resp. at 5.
- Facing budget shortfalls for the 2018-2019 academic year, Defendant Gallogly began searching for areas in which to narrow the deficit. *See* [Doc. No. 116 at 2].
- On January 14, 2019, Defendant Harper spoke with Plaintiff and discussed budget cuts proposed for the CIS. *See* ***[*4]*** OU Board of Regents' Mot. at 12; Pl.'s Resp. at 5.
- The budget cut proposal included eliminating the study abroad program in Rio de Janeiro, Brazil (Rio Program). *See* [Doc. No. 116 at 3].
- During the meeting, the following exchange occurred:

[Plaintiff]: I assume that you're going to be making this public, that — you know we haven't made any of this public because we're waiting for you guys to make your decisions. But now that you've made your decision, will make public the fact that OU in Rio is going to shut down.

[Defendant Harper]: Agreed. In the communication — you know, communication needs to be thought through. So this isn't — you know, the first step is to talk to you and for you and the manager to say, here are the things that have to happen for us to execute this. And some of that is going to be legal. Some of it is going to be budgetary. You know, we obviously have to know what the next level of management plan is to know the full communications plan. So don't go announcing this publicly before we are able to --

(Plaintiff laughs)

. . .

[Defendant Harper]: I understand you disagree with some of the particulars of this decision, it sounds like. But you still have the responsibility **[*5]** to execute them faithfully as a manager. And that includes, among other things, the communication strategy[.]

. . .

[Defendant Harper]: Are you in the clear understanding that we will develop a communication plan together? Suzette . . . there's a chain of command. I'm your boss. I am responsible for you. Is that clear?

[Plaintiff]: Well, it's clear — I'm clear on what you mean by that yes. I'm clear on what you mean by that. . . .

[Doc. No. 116 at 3]; *see also* OU Board of Regents' Mot. at 12-13; Pl.'s Resp. at 5, 7.

- Later the same day, Defendant Harper emailed

[2] All page citations refer to this Court's CM/ECF pagination.

Response to MSJ Ex.1

Plaintiff the outline of the proposed budget cuts to CIS. *See* OU Board of Regents' Mot. at 13; Pl.'s Resp. at 7.

• Still later the same day, Plaintiff telephoned Susan Savage, chair of the CIS Board of Visitors, and informed her about the proposed cuts to CIS, calling them "pretty drastic." [Doc. No. 116 at 4]; *see also* OU Board of Regents' Mot. at 13; Pl.'s Resp. at 7.

• The CIS Board of Visitors is a volunteer organization consisting of unpaid members of the general public — some of whom are very prominent OU donors. They have no fiduciary or personnel duties at OU and are outside OU's management. *See* [Doc. No. 116 at 4]; *see also* ***[*6]*** OU Board of Regents' Mot. at 13; Pl.'s Resp. at 7.

• Plaintiff then forwarded Ms. Savage the email Defendant Harper sent outlining the budget cuts. In the email, Plaintiff stated "these cuts will have a devastating impact on the quality and accessibility of international education for students at the University." [Doc. No. 116 at 4]; *see also* OU Board of Regents' Mot. at 13; Pl.'s Resp. at 7.

• Ms. Savage called Defendant Gallogly to complain about the budget cuts and demanded a meeting. She also forwarded the email to the entire CIS Board of Visitors. Ms. Savage reported to the group that "[t]he cuts are deep and extensive and there is no rationale provided for the targeted program or the dollar amounts. Also, there is no sense on how cuts across the University compare." [Doc. No. 116 at 4]; *see also* OU Board of Regents' Mot. at 14; Pl.'s Resp. at 8.

• One Board of Visitors member, Rebecca Cooper Dupin, informed Plaintiff she would disseminate the information to "key OU alums" and Plaintiff thanked her saying "[t]his is going to be a big fight — it has already been ugly, but not publicly so, and now the gloves have come off. I do need your help." OU Board of Regents' Mot. at 14; Pl.'s **[*7]** Resp. at 8.

• Ms. Savage later agreed that the proposed cuts would not have a "devastating impact" and that it would "have been a better situation for all of us to have heard firsthand" about the proposed cuts and the reasons for them directly from OU. [Doc. No. 116 at 4].

• On January 17, 2019, Defendant Harper sent Plaintiff a letter detailing her insubordination and failure to comply with his directive that the budget cuts were not to be publicly released until a joint communication plan had been created. *See* OU Board of Regents' Mot. at 14; Pl.'s Resp. at 8.

• Defendants Harper and Gallogly agreed that Plaintiff's communication with Ms. Savage and the Board of Visitors about the proposed budget cuts, in direct conflict with Defendant Harper's instructions, warranted her termination as the CIS Dean. *See* [Doc. No. 116 at 5].

• On January 18, 2019, Defendant Harper and Plaintiff met and Plaintiff was given several options, all of which included resigning as CIS's Dean. Plaintiff chose the option which included her remaining as a professor in the CIS program. *See* [Doc. No. 116 at 5]; *see also* OU Board of Regents' Mot. at 15; Pl.'s Resp. at 8.

• Plaintiff was removed from her dean position **[*8]** based on her direct contradiction of Defendant Harper's instructions. *See* [Doc. No. 116 at 5].

• Plaintiff was also removed from her positions as (1) Vice Provost for international programs, (2) the William J. Crowe Chair in Geopolitics, and (3) the President Community Scholars trip. *See* [Doc. No. 116 at 5].[3]

• OU deans are compensated differently, and salaries are based on a variety of factors, including the faculty salary structure within the college, the former dean's salary, and the dean's experience and personal salary history. *See* OU Board of Regents' Mot. at 27, 29; Pl.'s Resp. at 17-18.

• The primary influence on an OU dean's salary is the market forces of their respective college. *See* OU Board of Regents' Mot. at 28 & Ex. 10.[4]

---

[3] The parties disagree as to who initiated or authorized these removals, and whether they were automatic following her removal as CIS Dean, but they all agree Plaintiff was removed.

[4] Plaintiff "specifically disputes" this statement on two grounds. First, she alleges Jill Irvine — who made the averment — was only the "Interim" Provost and only for one year. Thus, Plaintiff alleges, with no citation in support, that Ms. Irvine lacks the "requisite experience" to provide such information. Pl.'s Resp. at 17-18. But the Court disagrees. Ms. Irvine swore she was aware of the various employment factors through her

• OU deans are the chief academic officer for their colleges and are responsible for managing the staff, faculty, and budget for their respective colleges. *See* OU Board of Regents' Mot. at 30, 32, 33; Pl.'s Resp. at 18-19.

• Colleges within OU are organized differently and a dean's responsibilities vary depending on the size, organization, and mission of the college. *See* OU Board of Regents' Mot. at 30-31; Pl.'s Resp. at 19.

## IV. Analysis

### A. Plaintiff's [*9] Title VII Non-Wage Discrimination and Retaliation Claims

#### 1. Title VII and the Required Elements

Pursuant to Title VII, it "shall be an unlawful employment practice for an employer --

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

*42 U.S.C.A. § 2000e-2(a)(1)-(2)*. Title VII also prohibits retaliation against an employee for reporting such discrimination. *See Hansen v. SkyWest Airlines, 844 F.3d 914, 925 (10th Cir. 2016)* ("By its terms, Title VII prohibits retaliation against an employee who has 'opposed any practice made an unlawful employment practice' by Title VII." (citing *42 U.S.C. § 2000e-3(a)*).

To prevail on her Title VII claims, Plaintiff must establish that Defendant OU Board of Regents engaged in "intentional discrimination." *Singh v. Cordle, 936 F.3d 1022, 1037 (10th Cir. 2019)*. Because she relies on indirect evidence **[*10]** to do so, the Court applies the *McDonnell Douglas* burden-shifting framework. *See id.* For Plaintiff's gender and associational discrimination claims, she must show "by a preponderance of the evidence, that she is a member of a protected class, she suffered an adverse employment action, and the challenged action occurred under circumstances giving rise to an inference of discrimination." *Bennett v. Windstream Commc'ns, Inc., 792 F.3d 1261, 1266 (10th Cir. 2015)*. If Plaintiff prevails at this step, Defendant bears the burden to "articulate a legitimate, nondiscriminatory reason for its actions. Then, the burden of production shifts again to . . . [P]laintiff to show that . . . [Defendant's] explanation was merely pretextual." *Id.*

For her retaliation claims, also based on indirect evidence, Plaintiff must establish (1) she engaged in protected opposition to discrimination; (2) Defendant OU Board of Regents acted against her in a way a reasonable person would have found materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action. *See Singh, 936 F.3d at 1042*.

Finally, "[i]n states with a state agency that has authority over employment discrimination claims[,] employees have up to 300 days to file an [Equal Employment Opportunity **[*11]** Commission (EEOC)] charge if they first file a charge with the state agency. A claim not filed within these statutory limits is time barred." *Jensen v. W. Jordan City, 968 F.3d 1187, 1203 (10th Cir. 2020)*, *cert. denied sub nom.*, *209 L. Ed. 2d 753 (May 17, 2021)*. Plaintiff filed her EEOC claim on March 26, 2019, *see* OU Board of Regents' Mot., Ex. 12, and thus only her claims arising after May 30, 2018 are properly before the Court. *See Jensen, 968 F.3d at 1199* (holding plaintiff's "Title VII claim did not allow recovery for harms that occurred more than 300 days before he filed his claim with the EEOC").

#### 2. Plaintiff's Prima Facie Case for Gender Discrimination and Gender-Related Retaliation

The parties agree that Plaintiff is a female and thus satisfies the first element in her prima facia case for

---

employment as Interim Senior Vice President and Provost. *See* OU Board of Regents' Mot., Ex. 10. The Court finds this sufficient. Second, Plaintiff argues simply that the primary influence is not the market forces of the college because "[a]t OU, the primary influence on a Dean's salary is the gender of the person who is dean." Pl.'s Resp. at 18. Plaintiff cites nothing but her own opinion on this matter, *see id.*, which is insufficient to dispute a material fact. *See Fed. R. Civ. P. 56(c)*.

Response to MSJ Ex.1

gender discrimination and retaliation for reporting gender discrimination. Thus, the Court turns to the second element — an alleged adverse employment action.

An "adverse employment action" "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)*. Here, Plaintiff has identified a smattering of alleged wrongdoing, including being verbally demeaned, **[*12]** criticized, required to submit a self-evaluation, etc. *See* Sec. Amend. Compl. at 11-13; Pl.'s Resp. at 23-24. However, the only conduct she alleges which constituted a significant change in employment status is her termination from the CIS Dean position, and the accompanying removal from various other positions, in January 2019. *See* *Dye v. Moniz, 672 F. App'x 836, 840 (10th Cir. 2016)* ("employees must show '*material* adversity because . . . it is important to separate significant from trivial harms.'" (quoting *Burlington, 548 U.S. at 68*)). Accordingly, the Court focuses only on this adverse employment action and finds it satisfies Plaintiff's second prima facia element.

The third element requires Plaintiff to show that her January 2019 termination occurred under circumstances giving rise to an inference of discrimination. "Courts have enumerated a variety of circumstances that can give rise to an inference of discriminatory motive, including:

> actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, preferential treatment given to employees outside the protected class, in a corporate downsizing, the systematic transfer of a discharged employee's duties to other employees, or a pattern of recommending the plaintiff for **[*13]** positions for which she is not qualified [or over-qualified] and failure to surface plaintiff's name for positions for which she is well-qualified. A plaintiff might also rely upon the fact that the defendant, following plaintiff's termination, continued to seek applicants to fill the position, or, more generally, upon the timing or sequence of events leading to plaintiff's termination."

*Plotke v. White, 405 F.3d 1092, 1101 (10th Cir. 2005)* (citation and internal ellipses omitted).

Plaintiff points to no actions or remarks implicating her gender during the January 2019 termination; however, she does allege she complained about gender-wage discrimination in a meeting with Defendants Gallogly and Harper on November 26, 2018. *See* Sec. Amend. Compl. at 5. The approximately seven-and-a-half-week gap between this complaint and her termination is likely sufficient to prove Plaintiff's prima facia case. *See Brown v. Wal-Mart Stores E., L.P., 969 F.3d 571, 578 (5th Cir. 2020)* ("Because the approximately six-to-seven-week gap between [plaintiff's] protected activity and her termination is shorter than gaps that we have previously found sufficient to show a causal connection, [plaintiff] has met her prima facie burden based on timing alone.").

### 3. Plaintiff's Prima Facie Case for Associational Discrimination and Associational-Related [*14] Retaliation

Turning to Plaintiff's claims for associational discrimination and associational-related retaliation, Defendant argues Plaintiff cannot satisfy the first element of her prima facia case. The Court disagrees.

Defendant relies on *Cano-Rodriquez v. Adams Sch. Dist. No. 14., No. 19-CV-01370-CMA-KLM, **2020 U.S. Dist. LEXIS 192551**, 2020 WL 6049531, at *3 (D. Colo. Apr. 22, 2020)*, wherein a magistrate judge recommended dismissing plaintiff's Title VII associational discrimination claim because he alleged discrimination based on his advocacy for, and association with, minority students. According to that court, "[p]laintiff's Title VII associational discrimination claim must be dismissed because [p]laintiff does not allege associational discrimination based on [p]laintiff's own race." *Id.* However, the court acknowledged that claims based on "interracial association" have been recognized in other courts. *See id.*

The Court compares that case with *Johnson v. University of Cincinnati, 215 F.3d 561 (6th Cir. 2000)*. There, as here, plaintiff was a university employee who alleged he was terminated for advocating for minorities at the university. *See id.* The district court found that plaintiff failed to show he was a member of a protected class, because he proffered his protected status "'not as a member of a racial minority, but rather as a person who advocates on behalf of women and minorities.'" **[*15]** *Id. at 573* (citation omitted). Discussing Title VII's inception and history, as well as relevant circuit court cases, the Sixth Circuit reversed

Response to MSJ Ex.1

and held that "based upon [the] well-settled state of the law, it is clear that [p]laintiff need not have alleged discrimination based upon his race . . . in order to satisfy the protected status requirement of his claims." *Id. at 575*.

The Court finds *Johnson* more persuasive and thus holds Plaintiff has satisfied her burden at step one. And, as discussed above, Plaintiff has also satisfied step two by showing her January 2019 termination constituted an adverse employment action. *See supra* at 7-8.

Turning to step three, the evidence shows Plaintiff's January 2019 termination came during a time in which she was attempting to fight budget cuts to programs involving international minority students and study abroad programs. *See id.* at 2-4; *see also* Pl.'s Resp. at 6-7. Plaintiff believed some of these cuts, particularly those to the Rio Program, were motivated by discriminatory animus. *See* Pl.'s Resp. at 6-7. Because her burden on the prima facia case is de minimis, *see Plotke, 405 F.3d at 1101*, the Court concludes that Plaintiff has therefore satisfied her prima facie case on the third element.

### [*16] 4. Defendant OU Board of Regent's Articulation of a Legitimate, Nondiscriminatory Reason for its Actions

Because Plaintiff has established a de minimis prima facie case for her non-wage discrimination and retaliation claims, the burden now shifts to Defendant OU Board of Regents. However, Defendant's "burden is exceedingly light, as its stated reasons need only be legitimate and non-discriminatory on their face." *DePaula v. Easter Seals el Mirador, 859 F.3d 957, 970 (10th Cir. 2017)* (citations and quotations omitted).

According to Defendant, it had a legitimate, nondiscriminatory reason for the January 2019 termination — namely, Plaintiff's dissemination to Ms. Savage (and discussion with Ms. Dupin) of the proposed budget cuts in direct violation of Defendant Harper's instructions and without first having participated in creating a communication plan. *See* OU Board of Regents' Mot. at 44-46. More specifically, Defendant relies on the undisputed facts that: (1) Plaintiff's supervisor, Defendant Harper, gave her direct instructions to keep the budget cuts to the CIS program private until they could create a joint communication plan; (2) Plaintiff nevertheless made the information public to Ms. Savage and Ms. Dupin so she could "fight" the budget cuts; and **[*17]** (3) those individuals further published the information to "key OU alums" with Plaintiff's knowledge. *See supra* at 3-4.

Based on this, the Court finds Defendant OU Board of Regents has carried its burden of proving a legitimate and nondiscriminatory reason for its action. *See Faghri v. University of Connecticut, 621 F.3d 92, 97 (2nd Cir. 2010)* (holding the "university was entitled to have [a dean] position occupied by one who voiced support for, or at least did not voice opposition to, the university's policies" and was "not required to retain in a management or policymaking position a person who publicly opposes its policies."); *Valencia v. Bd. of Regents, Univ. of New Mexico, 852 Fed. Appx. 345, 2021 U.S. App. LEXIS 11148, 2021 WL 1529748, at *9-10 (10th Cir. 2021)* (holding university met its burden of showing a legitimate, nondiscriminatory reason for professor's termination by citing misconduct).

### 5. Plaintiff's Burden to Prove Pretext

Now the burden shifts back to Plaintiff to "present evidence to establish there is a genuine issue of material fact as to whether [Defendant's] articulated reason for the adverse employment action was pretextual." *DePaula, 859 F.3d at 970*. Plaintiff may either present evidence that the "'proffered reason is factually false,'" or that "'discrimination was a primary factor in [Defendant OU Board of Regents'] decision.'" *Id.* (citations omitted). The latter can be accomplished "'by **[*18]** revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the . . . proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence.'" *Id.* (citation omitted).

Though she does not address this issue in her brief,[5] Plaintiff's proposed list of undisputed facts alleges that she believed contacting the CIS Board of Visitors was within her job duties and her discussions with that

---

[5] Instead of directly addressing pretext, Plaintiff states she "incorporates by referencing the facts and arguments presented in her responses to Dr. Harper and President Gallogly's motions for summary judgment of Dr. Grillot's *First Amendment* claims asserted against the two. Concisely, the other reason OU posits for Dr. Grillot's termination constitutes unlawful retaliation as well." Pl.'s Mot. at 33-34. But pretext was not at issue in those motions, and it is not the Court's duty to scour Plaintiff's other briefs to find arguments to support her contentions here.

organization did not constitute a public release of information. *See* Pl.'s Resp. at 7-8, 20. The Court assumes Plaintiff lists these facts to suggest that she did not participate in any wrongdoing and thus Defendant Harper's decision to terminate her was pretextual. Notably, this argument appears inconsistent with her admission in an earlier summary judgment response that (1) Defendants Harper and Gallogly agreed that Plaintiff's communication with Ms. Savage and the Board of Visitors about the proposed budget cuts, in direct conflict with Defendant Harper's instructions, warranted her termination as the CIS Dean and (2) Plaintiff was removed from her dean position based on her direct contradiction of Defendant Harper's instructions. *See* ***[*19]*** *supra* at 4.

Moreover, in analyzing Plaintiff's claim of pretext, the Court examines the facts as they appeared to Defendant Harper and it does not "second guess" his judgment. *See* *Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1307 (10th Cir. 2017)*. Nor does the Court ask if Defendant Harper's decision was wise, fair, or correct. *See id.* Rather, the Court must determine whether Defendant Harper honestly believed the legitimate, nondiscriminatory reason he gave for his conduct and acted in good faith on that belief. *See id.* Though the Court construes the evidence in Plaintiff's favor, it nevertheless finds that no reasonable juror could find pretext in this scenario. It is undisputed that Defendant Harper (1) instructed Plaintiff not to publicly release the information until they had created a communication plan together and (2) Plaintiff nevertheless forwarded the information to non-OU employees, who in turn forwarded the information to members of the general public. *See supra* at 3-4. Further, it is undisputed that:

- Plaintiff told Ms. Savage that "these cuts will have a devastating impact on the quality and accessibility of international education for students at the University;"
- Ms. Savage then called Defendant Gallogly to complain about the budget **[*20]** cuts and demanded a meeting. She also reported to the entire CIS Board of Visitors that "[t]he cuts are deep and extensive and there is no rationale provided for the targeted program or the dollar amounts. Also, there is no sense on how cuts across the University compare;" and,
- Ms. Savage later agreed that the proposed cuts would not have a "devastating impact" and that it would "have been a better situation for all of us to have heard firsthand" about the proposed cuts and the reasons for them directly from OU.

*Id.* at 4. In other words, Plaintiff's dissemination of the information — before OU could release a formal statement with rationale and comparable numbers — caused confusion and frustration for the Board of Visitors and Defendants Gallogly and Harper. And, within three days of Plaintiff's dissemination of the material, Defendant Harper wrote Plaintiff explaining his finding of insubordination, stating:

> I was perfectly explicit that until we had clarity on a management and communication plan, decisions were not to be made public. To date, only a high-level budget decision had been made, and there is considerable work to do to execute it. As you are aware, this work likely involves **[*21]** personnel changes and complex legal actions, and it is in the institution's interest to understand the management plan before disseminating details publicly. Nevertheless, at 6:58 p.m. on January 14, 2019 President Gallogly and I received an advocacy email from Susan Savage, Chair of the College Board of Visitors, sent on behalf of the students, faculty, and members of the Board, asking us to reconsider the budget decisions. A copy of my email to you was included in the message. You contravened my explicit instructions not to publicize decisions and continued a pattern of behavior that is incompatible with the role of the Dean.

OU Board of Regents' Mot., Ex. 20.

Based on this evidence, the Court finds that Defendant OU Board of Regents has proven that Defendant Harper honestly believed the legitimate, nondiscriminatory reason he gave for his conduct and acted in good faith on that belief. Accordingly, the Court finds Plaintiff has failed to carry her burden of showing pretext.

### 6. Summary

Applying the undisputed facts to the *McDonnell Douglas* framework, the Court finds Plaintiff has established a prima facie case on her non-wage discrimination and retaliation claims arising under Title **[*22]** VII. However, Defendant OU Board of Regents has carried its burden of articulating a legitimate, nondiscriminatory reason for its actions and Plaintiff failed to establish that explanation was pretextual. Summary judgment is therefore GRANTED to Defendant OU Board of Regents on Plaintiff's Title VII claims for (1) non-wage gender discrimination; (2) retaliation for reporting gender

Response to MSJ Ex.1

discrimination; (3) discrimination for association with a protected class; and (4) retaliation for reporting discrimination against members of a protected class.

**B. Plaintiff's Wage-Related Claims Under the EPA and Title VII**

Plaintiff also brings claims under the EPA and Title VII for gender-based wage discrimination. The Court reviews them in turn.

**1. Plaintiff's EPA Claim**

The EPA prohibits wage discrimination "between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *29 U.S.C. § 206(d)(1)*; *see also* *Riser v. QEP Energy, 776 F.3d 1191, 1195 (10th Cir. 2015)*.

To establish a prima facie case of wage discrimination under the EPA, Plaintiff must demonstrate that: "(1) she was performing work which was substantially equal to that of the male employees **[*23]** considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; [and] (3) the male employees were paid more under such circumstances." *Riser, 776 F.3d at 1196* (citation omitted). Courts do not construe the "equal work" requirement broadly, and "failure to furnish equal pay for comparable work or like jobs is not actionable." *Sprague v. Thorn Ams., Inc., 129 F.3d 1355, 1364 (10th Cir. 1997)* (citation and internal quotation marks omitted). "Rather, in order to prevail in . . . an EPA action, the jobs must be substantially equal in terms of skill, effort, responsibility, and working conditions.'" *Id.* (same); *see also* *Riser, 776 F.3d at 1196* (whether work is substantially equal "turns on the actual content of the job—not mere job descriptions or titles"). If Plaintiff succeeds in establishing her prima facie case, Defendant OU Board of Regents "must show the pay disparity was justified by one of four permissible reasons: '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'" *Riser, 776 F.3d at 1198*. If Defendant carries its burden, Plaintiff must present evidence of pretext to rebut Defendant's **[*24]** EPA defense. *See* *Casalina v. Perry, 708 F. App'x 938, 941 (10th Cir. 2017)* (relying on *Brownlee v. Gay & Taylor, Inc., 861 F.2d 1222, 1224 (10th Cir. 1988)*).

**a. Plaintiff's Prima Facia Case**

Concentrating on the first element, Plaintiff insists that "all deans at OU had identical job duties and responsibilities," namely "the administration of a singular college." Pl.'s Mot. at 26. However, Plaintiff does not dispute that (1) all OU deans "are being compensated differently;" (2) there is no set salary for an OU dean; (3) the dean's salary is dependent upon the salary structure within the college and the former dean's salary; (4) all colleges are organized and operated differently and "the specific responsibilities of the dean may vary depending on the mission, organization, and size of the college;" and (5) she was paid more than three male OU deans and two female OU deans. *Supra* at 5; *see also* OU Board of Regents' Mot. at 27; Pl.'s Resp. at 17.

More specifically, turning to the nine male OU deans who were paid more than Plaintiff in 2018, the comparison shows:

Go to table1

*See* OU Board of Regents' Mot. at 27, 31-34; Pl.'s Resp. at 17, 19.

Based on this evidence, it is clear that while OU deans may all share the responsibility of managing a singular college, the effort required to manage that college is varying. In fact, of those deans paid more than Plaintiff, (1) all but two supervised additional academic departments; (2) all but two supervised more faculty and staff; and (3) all but one was responsible for more doctorate degrees. Indeed, the only college with similar or lower numbers to CIS is the Graduate College, whose dean also oversaw only one department, had fewer employees and a smaller budget, and made $9,316.00 more than Plaintiff. But the Dean of the Graduate College also supervised a college with twelve doctorate degrees, whereas Plaintiff oversaw none. Accordingly, the Court finds as a matter of law that Plaintiff has failed to produce evidence that her job functions were substantially similar to those of her male counterparts for purposes of an EPA claim. *See* *Sprague, 129 F.3d at 1364*; *Keller v. Crown Cork & Seal USA, Inc., 491 F. App'x 908, 912 (10th Cir. 2012)* (affirming **[*26]** summary judgment where the evidence showed merely that jobs were comparable which is insufficient to establish an EPA violation); *Somers v. Cudd Energy Servs., Inc., No. CIV-11-724-M, 2012 U.S.*

Response to MSJ Ex.1

Dist. LEXIS 70430, 2012 WL 1836269, at *10 (W.D. Okla. May 21, 2012) (granting summary judgment on plaintiff's EPA claim because: "There is simply insufficient evidence that these other supervisor jobs required equal skill, effort, and performance as compared to plaintiff's position."); Byrd v. Auburn Univ. at Montgomery, No. CIVA 2:05CV835 CSC, 2007 U.S. Dist. LEXIS 28411, 2007 WL 1140424, at *9 (M.D. Ala. Apr. 17, 2007) (finding former assistant vice chancellor at university failed to establish a prima facia case under the EPA where the facts showed her male counterpart was responsible, in relevant part, for additional educational centers and had greater budgetary and supervisory responsibilities), *aff'd sub nom.*, 268 F. App'x 854 (11th Cir. 2008).

**b. Defendant OU Board of Regents' Burden to Prove a Justified Reason for the Pay Disparity**

Although Plaintiff did not state a prima facia case under the EPA's first element, the Court continues the analysis and alternatively finds that Defendant has sufficiently established justification for the pay disparity, based on a factor other than sex. Again, the undisputed facts establish that OU admittedly pays every dean differently and factors in (1) the market forces of the college; (2) the faculty salary structure within the college; (3) the number **[*27]** of faculty and staff to be managed; (4) the prior dean's salary; (5) the dean's experience and personal salary history; and (6) each college's mission, organization, and size. *See supra* at 5. Indeed, based on this system, Plaintiff was paid more than three male OU deans and more than two female OU deans. *See supra* at 16.[6] Even construing the evidence in a light most favorable to Plaintiff, the Court finds that Defendant's "proffered reasons *do in fact* explain the wage disparity" and "no rational jury could find to the contrary." Nazinitsky v. INTEGRIS Baptist Med. Ctr., Inc., 852 Fed. Appx. 365, 2021 U.S. App. LEXIS 11723, 2021 WL 1561334, at *2 (10th Cir., 2021); *see also* Finke v. Trustees of Purdue Univ., No. 1:12-CV-124-JD, 2014 U.S. Dist. LEXIS 88527, 2014 WL 2938384, at *21 (N.D. Ind. June 30, 2014) (granting summary judgment to university after demoted-dean alleged unequal pay under the EPA and holding: "Even assuming that [plaintiff] can establish a prima facie case, [the university] has established a bona fide, gender neutral reason for paying [plaintiff] less than other male deans: specifically, that it relies on CUPA data in setting salaries for its deans, and according to those metrics, deans of nursing programs are paid less than deans of other programs—as relevant here, Engineering, Business, Arts and Sciences, and Visual and Performing Arts. Under the EPA, the marketplace value of the **[*28]** skills of a particular individual is an appropriate consideration for determining an employee's salary").

**c. Plaintiff's Burden to Prove Pretext**

Plaintiff must now establish pretext to rebut Defendant's EPA defense. To do so, she must provide evidence "that [OU Board of Regents] intended to discriminate, and that the affirmative defense claimed is merely a pretext for discrimination." Maxwell v. City of Tucson, 803 F.2d 444, 446 (9th Cir. 1986) (cited with approval, Brownlee, 861 F.2d at 1224).

Plaintiff does not discuss pretext as it relates to her EPA allegations and, aside from her personal opinion that gender plays a role in determining salary at OU, the Court finds no statement of fact or other evidence to support a pretext argument. Accordingly, Defendant OU Board of Regents is entitled to summary judgment on Plaintiff's EPA claim.

**2. Plaintiff's Title VII Gender Wage Claim**

For her Title VII gender wage claim, Plaintiff need not prove she performed equal work. *See* Sprague, 129 F.3d at 1362. Instead, to demonstrate a prima facie case of gender-based wage discrimination under Title VII, Plaintiff must show: "(1) she is a member of a protected class, . . . and (2) she occupied a job similar to higher paid jobs occupied by male employees." Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 636 (10th Cir. 2012). If she can make this showing, Defendant OU Board of **[*29]** Regents assumes the burden of articulating a legitimate, nondiscriminatory reason for the disparity. *See id.* If it can do so, Plaintiff must then carry her burden of demonstrating Defendant's stated reasons are pretextual. *See id.*

**a. Plaintiff's Prima Facia Case**

The parties acknowledge Plaintiff is a member of a

6 Plaintiff also complains that she earned only 82.29% of her salary market, compared with other deans who earned "much larger percentages, even in excess, of their salary market." Pl.'s Resp. at 29. While this may well show Plaintiff was underpaid, it does not prove she was underpaid because she was female, particularly considering the undisputed evidence above.

Response to MSJ Ex.1

protected class and, based on the chart above, *see supra* at 16, a reasonable juror could find that Plaintiff's CIS Dean position was similar to the higher paid dean positions occupied by male employees. Thus, the Court finds she has stated a prima facia case for wage discrimination under Title VII.

**b. Defendant OU Board of Regents' Burden to Articulate a Legitimate, Nondiscriminatory Reason for the Pay Disparity**

The burden now shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the pay disparity.

The Court finds Defendant has carried its burden. That is, Defendant OU Board of Regents has presented undisputed evidence that (1) OU deans' salaries are based on a variety of factors, including the faculty salary structure within the college and the market forces of their respective colleges; (2) colleges within OU are organized differently and a dean's responsibilities **[*30]** vary depending on the size, organization, and mission of the college; (3) the number of academic departments is different for each college; and (4) OU deans are responsible for managing the staff, faculty, and budget for their respective colleges. *See supra* at 5. It is also undisputed that (1) Plaintiff's college had only one academic department; (2) Plaintiff oversaw a smaller budget and fewer staff than most other deans; and (3) Plaintiff did not oversee any doctorate graduates. *See id.* at 16. These facts are sufficient to show a legitimate, nondiscriminatory reason for the pay disparity. *See DePaula, 859 F.3d at 970* (noting a defendant's "burden is exceedingly light, as its stated reasons need only be legitimate and non-discriminatory on their face").

**c. Plaintiff's Burden to Prove Pretext**

Plaintiff must now present some evidence of pretext. However, Plaintiff has relied on her argument that Defendant cannot prove a legitimate, nondiscriminatory reason for the disparity and thus does not discuss pretext. *See* Pl.'s Resp. at 29-30. And again, aside from her own belief that gender plays a role in salary decisions at OU, the Court finds no evidence in Plaintiff's response that would infer pretext in wage assignment. **[*31]** Without further evidence or argument from Plaintiff, the Court finds Defendant is entitled to summary judgment on this claim.

**V. Conclusion**

Based on the foregoing, the Court GRANTS summary judgment to Defendant OU Board of Regents on Plaintiff's claims for (1) gender discrimination under Title VII; (2) retaliation for reporting gender discrimination under Title VII; (3) discrimination for association with a protected class under Title VII; (4) retaliation for reporting discrimination against members of a protected class under Title VII; and (5) wage discrimination based on gender under the EPA and Title VII.

This ruling terminates the action. A separate judgment will issue.

IT IS SO ORDERED this 29th of July, 2021.

/s/ Bernard M. Jones

BERNARD M. JONES

UNITED STATES DISTRICT JUDGE

**JUDGMENT**

Pursuant to Orders filed separately [Doc. Nos. 116, 117], Defendants Gallogly, Harper, and OU Board of Regents' motions for summary judgment are GRANTED and judgment is entered in Defendants' favor.

ENTERED this 29th day of July, 2021.

/s/ Bernard M. Jones

BERNARD M. JONES

UNITED STATES DISTRICT JUDGE

Response to MSJ Ex.1

**Table1 (*Return to related document text*)**

| College | Salary | Departments | Faculty/Staff | Budget (millions) | Dr. Degrees |
|---|---|---|---|---|---|
| CIS (Plaintiff) | $218,250.00 | 1 | 64.26 | $7.97 | 0 |
| Architecture | $265,000.00 | 5 | 54 | $4.65 | 0 |
| Arts & Science | $285,000.00 | 27 | 940.72 | $70.66 | 90 |
| Atmospheric & Geographic Science | $367,093.00 | 2 | 268.07 | $9.42 | 13 |
| Business | $364,020.00 | 6 | 149.58 **[*25]** | $22.08 | 3 |
| Earth & Energy | $286,150.00 | 2 | 116.82 | $10.55 | 18 |
| Education | $272,350.00 | 3 | 159.55 | $6.7 | 49 |
| Engineering | $278,368.00 | 7 | 233.38 | $19.03 | 39 |
| Graduate | $227,566.00 | 1 | 15.25 | $1.18 | 12 |
| Law | $325,283.00 | 1 | 92.05 | $24.7 | 162 |

**Table1 (*Return to related document text*)**

End of Document